# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   **v.**                                     **Case No. 08-CR-324**

**DEWAYNE ALEXANDER**
        **Defendant.**

---

## SENTENCING MEMORANDUM

A man named DeAngelo Newbon asked defendant Dewayne Alexander to give him a ride so he could see a friend, defendant's cousin LaBronte Coney. Newbon actually had something else in mind. After picking up Coney, Newbon started talking about a "lick," i.e., a robbery, and directed defendant to drive to the Lincoln State Bank. Newon then entered the bank and robbed it of nearly $4000 at gun point. After Newbon exited, defendant drove him from the bank and later received a cut of $200. Coney disposed of Newbon's clothing from the robbery.

Police identified defendant as the driver, he agreed to cooperate and identified the other two. Charged with aiding and abetting armed bank robbery, 18 U.S.C. §§ 2113 & 2, defendant pleaded guilty, and I set the case for sentencing. In imposing sentence, I first calculate the advisory guideline range, then consider any departures from the guideline range, and finally impose sentence under all of the factors enunciated in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 128 S. Ct. 586, 596-97 (2007).

### I. GUIDELINES

Robbery carries a base offense level of 20 under U.S.S.G. § 2B3.1(a), and I added

enhancements of 2 levels because the property of a financial institution was taken and 5 levels because Newbon brandished a firearm, for an adjusted level of 27. I then subtracted 2 levels based on defendant's minor role, U.S.S.G. § 3B1.2(b), and 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 22. Coupled with defendant's criminal history category of III, level 22 produces a guideline range of 51-63 months. The parties agreed with these calculations, which I adopted accordingly.

## II. DEPARTURES

The government moved for a departure under U.S.S.G. § 5K1.1 in order to reward defendant for his cooperation against Newbon and Coney. In ruling on such a motion, I consider:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a). I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n.3, but the extent of the departure is within my discretion. In attempting to quantify the departure, I typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

2

Defendant was the first individual approached by law enforcement after the robbery, and he promptly agreed to cooperate, describing the crime and identifying Newbon and Coney as the others involved. Defendant agreed to testify against Newbon and Coney, but they also pleaded guilty.

Given this assistance, I awarded 1 level under the first factor, as defendant's information was significant and useful in identifying and obtaining the convictions of Newbon and Coney. However, it appeared that the government had other information and evidence about this crime as well, and defendant provided no information about criminal activity by others, allowing the government to make additional cases, so as to warrant a 2 level reduction. Under the second factor, I awarded 2 levels based on the government's belief that defendant's information was truthful and complete, corroborated by surveillance, physical evidence and other witness statements. Under the third factor, I awarded 1 level because the assistance was limited to providing information and agreeing to testify; defendant engaged in no pro-active cooperation and was not required to actually testify. I awarded no reduction under the fourth factor; although defendant may have been apprehensive about identifying Newbon, the record contained no specific evidence of danger or risk, or of injury. Finally, I awarded 1 level under the fifth factor, as defendant cooperated promptly and identified the others; nothing in the record suggested that the promptness was particularly significant, warranting more.

Therefore, I granted a total reduction of 5 levels, making the range 30-37 months.

### III. SENTENCE

In imposing the ultimate sentence, the district court must consider all of the factors set forth in 18 U.S.C. § 3553(a), United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008):

3

(1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. § 3553(a)(2). While the guideline range will generally be the starting point in making this determination, the district court may not presume that the guideline sentence is the correct one. Nelson v. United States, 129 S. Ct. 890, 892 (2009); Gall, 128 S. Ct. at 596-97; Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, the court must independently determine an appropriate sentence based on all of the circumstances of the case and under all of the § 3553(a) factors. See United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129

4

S. Ct. 474 (2008); United States v. Taylor, 586 F. Supp. 2d 1065, 1068 (E.D. Wis. 2008).

In the present case, as indicated above, defendant acted as the getaway driver for Newbon, after Newbon robbed a bank of nearly $4000. This was a very serious crime, as Newbon went armed and pointed a gun at a teller. The pre-sentence report ("PSR") contained statements from the affected tellers, one of whom resigned after the robbery. Clearly, Newbon's conduct had a significant effect on them. Defendant expressed remorse for his involvement, and his prompt cooperation allowed police to identify the others and close the investigation. I was nevertheless bewildered as to how defendant allowed himself to be drawn into this conduct.

At age forty, defendant was no longer a young man, and he had been in trouble with the law before, including convictions for drug possession in 1988 and uttering in 1994. In 1999, he was convicted of conspiracy to distribute cocaine and sentenced to 61 months in prison by a federal district court in Michigan. Defendant did well in federal prison, completing the 500 hour program, receiving good work evaluations and incurring no conduct reports. He secured work while in pre-release community confinement and complied with the rules. He commenced five years of supervised release in August 2003, which was later transferred to this district, and again his performance was good overall, until his involvement in this offense, just a few months shy of his termination date. I found it hard to understand why he took such a risk at this point in his life. Defendant's supervised release was revoked based on this incident, and he faced sentencing after revocation before another judge in this district.

As to his character otherwise, it appeared that defendant had a good childhood, and his other siblings avoided legal problems. The family members who spoke to the PSR writer also could not understand how he re-involved himself in criminal activity, especially so close to

5

discharging from supervision. The family was otherwise positive, describing defendant as big-hearted and committed to his children, and several relatives appeared and spoke in support at sentencing.

Defendant was married from 1994 to 2001, and the marriage produced two children, ages eighteen and fifteen. The youngest lived with defendant. Defendant married again in 2003, and he and his wife had a ten-year-old daughter together. Defendant's wife remained supportive, if somewhat frustrated by the circumstances.

Defendant graduated high school, owned a home and compiled a decent work record. He admitted past use of drugs, but that seemed to be behind him, as recent tests on supervised release were negative. However, the PSR described some serious health problems including diabetes, heart stents, and herniated lumbar discs, for which he required medical treatment.

The guidelines called for a term of 30-37 months, after the departure. While this was no doubt a serious crime requiring a prison term to satisfy the purposes of sentencing, I found that given the particular nature of defendant's conduct, and his other positive qualities, a sentence somewhat below the range would suffice.

First, the range was somewhat greater than necessary to provide just punishment given defendant's specific conduct. See 18 U.S.C. § 3553(a)(2)(A). The parties agreed to a 2 level reduction under U.S.S.G. § 3B1.2(b), which I granted, but that reduction had a limited effect given the significant enhancements defendant also received. In addition to the base level of 20 applicable to robberies generally, defendant received enhancements of 2 levels based on the taking of property from a financial institution and 5 levels for brandishing of a gun, even though he did not choose to rob a bank or possess a gun, or provide the gun to Newbon.

6

Newbon's conduct was attributable to defendant under U.S.S.G. § 1B1.3(a)(1)(B), but I did not think those enhancements properly reflected the seriousness of defendant's specific conduct, which, as indicated, involved agreeing to give Newbon a ride, only later learning that Newbon intended to commit a robbery, then driving Newbon from the scene. He did nothing further to assist Newbon, and received a small cut, just $200 of the $4000 proceeds.

A 2 level deduction from the adjusted level of 27 provided only about a 20% sentence reduction under the guidelines, and I could not conclude that defendant was 80% as culpable as Newbon. By limiting role reductions to 2-4 levels (with the 4 level reduction to be used "infrequently," U.S.S.G. § 3B1.2 cmt. n.4), the guidelines do not always permit courts to assign relative culpability appropriately. This is most often a problem in drug cases, where lower level participants may be held accountable for large drug weights, see, e.g., United States v. Cabrera, 567 F. Supp. 2d 271, 276-78 (D. Mass. 2008), but it can be an issue in cases like this one, as well.

Second, I found the guideline range a bit greater than necessary to protect the public and deter. See 18 U.S.C. § 3553(a)(2)(B) & (C). Defendant had a prior record, as discussed, but he had been doing better lately. His performance during his last prison stint and on supervision demonstrated a change in attitude, which was further confirmed by the statements from his family. This incident appeared to represent a temporary (albeit severe) lapse in judgment and perhaps a misguided desire to help Newbon and Coney, his cousin. His desire to redeem himself was evident in his prompt cooperation. However, as the government rightly noted, defendant continued to get in trouble, even as he approached middle age. Although events in this case unfolded quickly, he did agree to accept some of the proceeds of the robbery. Therefore, a prison term was necessary to deter defendant from re-offending.

7

Under all of the circumstances, I found a sentence of 24 months sufficient but not greater than necessary to satisfy the purposes of sentencing. I considered defendant's health conditions under § 3553(a)(2)(D), but found that they were not so severe the Bureau of Prisons ("BOP") could not handle them. This sentence varied modestly from the guidelines after the departure, and because it was based on the particular facts of the case discussed herein, it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

## IV. CONCLUSION

I therefore committed defendant to the custody of the Bureau of Prisons for 24 months. I recommended that the BOP evaluated his health problems and place him at an appropriate facility as close to Milwaukee as possible. I further ordered defendant to make restitution to the bank, joint and several with the co-defendants.

Upon release from prison, I ordered defendant to serve five years of supervised release. I selected the maximum supervision term to ensure that defendant was monitored and paid restitution. As conditions of supervision, I ordered him to make regular restitution payments and provide access to all financial information requested by the supervising probation officer. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 8th day of June, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge